NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 180533-U

NOS. 4-18-0533, 4-18-0534, 4-18-0535 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 8, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| DARIUS REED, | ) | Nos. 16CF807 |
| Defendant-Appellant. | ) | 17CF1579 |
| | ) | 17CF1612 |
| | ) | |
| | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Cavanagh and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held:*    (1) Although the trial court provided defendant an incorrect sentencing admonishment, the court's error did not require defendant's global plea agreement to be vacated.

(2) Defendant failed to establish he was prejudiced by his trial counsel's alleged ineffective assistance of counsel.

¶ 2    On January 4, 2023, in light of its decision in *People v. Stewart*, 2022 IL 126116, the Illinois Supreme Court issued a supervisory order (*People v. Reed*, No. 126750 (Ill. January 4, 2023) (supervisory order)) directing this court to both vacate and reconsider our initial judgment in this appeal (*People v. Reed*, 2020 IL App (4th) 180533, 175 N.E.3d 717) to determine if a different result is warranted on defendant's argument the trial court erred in denying his motions to withdraw his guilty pleas after the supreme court's decision in *Stewart*.

That same day, this court vacated our prior opinion.

¶ 3     On January 18, 2023, this court ordered the parties to each file a supplemental brief to address the effect the Illinois Supreme Court's opinion in *Stewart* had on this appeal. Based on the supplemental briefs filed by the parties, defendant and the State agree the issues before this court are still whether defendant's global guilty plea was knowing and voluntary, considering the trial court admonished defendant he was eligible for a Class X sentence of between 6 and 30 years in Macon County case No. 16-CF-807, and whether defendant's trial counsel was ineffective for stipulating defendant was eligible for a Class X sentence in the same case. After considering the supreme court's decision in *Stewart*, the initial and supplemental briefs submitted by the parties, and the record in this case, we again affirm the trial court's denial of defendant's motions to withdraw his guilty pleas and hold defendant did not establish he was prejudiced by his trial counsel's alleged ineffective assistance.

¶ 4                                  I. BACKGROUND

¶ 5     In March 2018, the trial court held a plea hearing in Macon County case Nos. 15-CF-1514, 16-CF-807, 17-CF-142, 17-CF-867, 17-CF-1579, and 17-CF-1612. The State relayed the terms of the plea agreement between defendant and the State as follows. In case No. 16-CF-807, defendant would plead guilty to unlawful possession of a controlled substance with intent to deliver 1 or more grams but less than 15 grams of a substance containing cocaine, a Class 1 felony (720 ILCS 570/401(c)(2) (West 2016)). According to the charging instrument, the charged offense occurred on or about June 21, 2016. The State noted defendant was subject to Class X sentencing based on his criminal history. In case No. 17-CF-1579, defendant would plead guilty to unlawful possession of a controlled substance with the intent to deliver 15 grams or more but less than 100 grams of a substance containing cocaine, a Class X felony (720 ILCS

570/401(a)(2)(A) (West 2016)).  In case No. 17-CF-1612, defendant would plead guilty to an armed habitual criminal charge, also a Class X felony (720 ILCS 5/24-1.7 (West 2016)).  The State indicated defendant would be required to serve 85% of his sentence for this offense.

¶ 6    Under the terms of the plea agreement, the trial court could only sentence defendant to a combined maximum of 20 years' imprisonment.  Defendant's sentences in case Nos. 17-CF-1579 and 17-CF-1612 would run concurrently. However, those sentences would run consecutively to defendant's sentence in case No. 16-CF-807.  The remaining counts in the three cases would be dismissed, as would case Nos. 17-CF-867, 17-CF-142, and 15-CF-1514.  Defense counsel acknowledged these were the terms of the plea agreement.

¶ 7    The trial court admonished defendant the sentencing range for each of the three offenses to which defendant was pleading guilty was 6 to 30 years in prison.  Further, defendant's sentence in case No. 16-CF-807 would run first, followed by concurrent sentences in case Nos. 17-CF-1612 and 17-CF-1579.  The court also advised defendant he would have to serve 85% of his sentence in case No. 17-CF-1612.  The State asked the court to take judicial notice of its own case files, specifically Macon County case Nos. 06-CF-1032 and 07-CF-1207.  The court noted it would do so.

¶ 8    At the May 2018 sentencing hearing, the trial court indicated defendant committed two new crimes while he was out on bond in case No. 16-CF-807.  As for defendant's prior criminal history, the court noted defendant was convicted of burglary in case No. 06-CF-1032 and received probation. However, his probation was later terminated, and he was sent to prison.  He was later sentenced to prison for burglary (case No. 07-CF-1207), forgery (case No. 07-CF-1228), and retail theft (case No. 08-CF-369). In case No. 10-CF-297, defendant received probation.  However, defendant's probation was terminated, and he was sent to prison.

Defendant was also sent to prison for financial institution fraud (case No. 12-CF-211) and criminal trespass (case No. 12-CF-364). With regard to his prior criminal history, the court indicated defendant had a "horrible record."

¶ 9 The trial court noted defendant was not eligible for probation and a strong sentence was needed as a deterrent and to protect the public. The court sentenced defendant to eight years in prison with three years of mandatory supervised release (MSR) in case No. 16-CF-807. In case No. 17-CF-1579, the court noted the offense was a little more serious and defendant was out on bond when the offense occurred. The court sentenced defendant to nine years in prison with three years of MSR to be served after defendant's sentence in case No. 16-CF-807. Finally, the court sentenced defendant to nine years in prison to be served at 85% with three years of MSR in case No. 17-CF-1612. This sentence was also to be served consecutively to defendant's sentence in case No. 16-CF-807 but concurrently with his sentence in case No. 17-CF-1579.

¶ 10 The trial court then advised defendant he would need to file a written motion asking to have the court's judgments vacated and for leave to withdraw his guilty pleas, setting forth the ground or grounds for his request, if he wished to appeal the court's decision. The court also told defendant any issue or claim not presented in the motion would be forfeited on appeal.

¶ 11 On June 1, 2018, defendant filed motions to reconsider his sentences and motions to withdraw his guilty pleas and vacate the judgments. The motions to withdraw the guilty pleas stated defendant believed the evidence relied on by the State could not be connected to him and was insufficient to convict him. Defendant also argued his sentences were excessive.

¶ 12 On July 5, 2018, the trial court denied defendant's motions.

¶ 13 Defendant appealed, arguing he should be allowed to withdraw his guilty pleas

because they were not knowingly and voluntarily made because he was erroneously admonished he was subject to a Class X sentence of 6 to 30 years in prison in case No. 16-CF-807 when he was only subject to a Class 1 sentence of 4 to 15 years in that case. On November 12, 2020, this court issued an opinion affirming the denial of defendant's motions to withdraw his guilty pleas, holding the trial court did not err in admonishing defendant he was eligible for a Class X sentence pursuant to section 5-4.5-95(b) of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-95(b) (West 2016)) in case No. 16-CF-807. *Reed*, 2020 IL App (4th) 180533, ¶¶ 29-30.

¶ 14　　　　Defendant filed a petition for leave to appeal this court's decision with the Illinois Supreme Court. On January 4, 2023, in light of the supreme court's decision in *Stewart*, the supreme court denied defendant's petition for leave to appeal but directed this court to both vacate and reconsider its judgment in this case. *Reed*, No. 126750 (Ill. January 4, 2023) (supervisory order). According to the supreme court's supervisory order, "The appellate court is directed to consider the effect of this Court's opinion in *People v. Stewart*, 2022 IL 126116, on the issue of whether the trial court erred in denying defendant's motions to withdraw his guilty pleas and determine if a different result is warranted." *Reed*, No 126750 (Ill. January 4, 2023) (supervisory order). That same day, this court vacated our judgment.

¶ 15　　　　On January 18, 2023, this court ordered the parties to each file a supplemental brief to address the effect of the Illinois Supreme Court's opinion in *Stewart* on the issue of whether the trial court erred in denying defendant's motions to withdraw his guilty pleas. Defendant filed his supplemental brief on February 14, 2023, and the State filed its supplemental brief on March 21, 2023. The parties agree the issues before this court are still (1) whether defendant's global guilty plea was knowing and voluntary, considering the trial court admonished defendant he was eligible for a Class X sentence of between 6 to 30 years in case

No. 16-CF-807, and (2) whether defendant's trial counsel was ineffective for stipulating defendant was eligible for a Class X sentence in case No. 16-CF-807.

¶ 16                                    II. ANALYSIS

¶ 17            In *Stewart*, our supreme court noted section 5-4.5-95(b) of the Code (730 ILCS 5/5-4.5-95(b) (West 2016)) was silent as to "whether the legislature intended a prior felony conviction to be a qualifying offense for Class X sentencing if the same offense would have resulted in a juvenile adjudication had it been committed on the date of the present offense." *Stewart*, 2022 IL 126116, ¶ 16.  The court stated it "has recognized that a statute's silence on a particular question is akin to an ambiguity in that it allows this court to look to extrinsic aids of construction to resolve the question."  *Stewart*, 2022 IL 126116, ¶ 18.  However, the court decided it did not need to rely on extrinsic aids to discern the legislature's intent because of Public Act 101-652 (eff. July 1, 2021), which amended section 5-4.5-95(b)(4) to provide the first qualifying offense for Class X sentencing must have been " 'committed when the person was 21 years of age or older.' "  *Stewart*, 2022 IL 126116, ¶ 19 (quoting Public Act 101-652 (eff. July 1, 2021)).

¶ 18            While recognizing "a statutory amendment creates a presumption that it was intended to change existing law," the Illinois Supreme Court indicated the presumption is not controlling in this situation because of the conflict over how section 5-4.5-95(b) should be interpreted between the First District's decision in *People v. Miles*, 2020 IL App (1st) 180736, 170 N.E.3d 984, and this court's prior and now vacated decision in this case.  *Stewart*, 2022 IL 126116, ¶ 20.  According to the supreme court:

> "The existence of these conflicting appellate court decisions negates the
> presumption that the legislature intended to change existing law when it amended

- 6 -

the statute to require that qualifying offenses must have been committed when the person was 21 years of age or older. [Citation.] Because of the differing views in the appellate court, there was no clear interpretation of the law to be changed. [Citation.] Accordingly, the split in the appellate court, when considered with the silence in the previous version of the statute on this issue, leads us to conclude that Public Act 101-652 was intended to resolve the conflict in the appellate court and clarify the meaning of the original statute. [Citation.] We therefore hold that defendant's 2013 conviction for an offense committed when he was 17 years old was not a qualifying offense for Class X sentencing under the previous version of section 5-4.5-95(b) of the Code." (Internal quotation marks omitted.) *Stewart*, 2022 IL 126116, ¶ 22.

As a result, the supreme court held the trial court erred in sentencing defendant as a Class X offender pursuant to section 5-4.5-95(b) of the Code. *Stewart*, 2022 IL 126116, ¶ 23.

¶ 19 Based on our supreme court's reasoning in *Stewart*, the trial court in this case erred in admonishing defendant he was eligible to receive a Class X sentence in case No. 16-CF-807. Regardless, our supreme court's decision in *Stewart* does not resolve the question currently before this court of whether the trial court erred in denying defendant's motions to withdraw his guilty pleas.

¶ 20 According to defendant, the answer is yes because he was told the incorrect sentencing range for his offense in case No. 16-CF-807, which defendant argues means he did not make a knowing and voluntary guilty plea. Citing *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969), defendant argues a guilty plea is only constitutionally valid where there is an affirmative showing the guilty plea was made voluntarily and intelligently. Illinois Supreme Court Rule

402(a)(2) (eff. July 1, 2012) provides a trial court must inform a defendant of the minimum and maximum sentences allowed by law before accepting a guilty plea.

¶ 21 A defendant does not have an absolute right to withdraw his or her guilty plea. *People v. Hughes*, 2012 IL 112817, ¶ 32, 983 N.E.2d 439 (2012). Instead, the defendant must show a manifest injustice under the facts in the case. *Hughes*, 2012 IL 112817, ¶ 32. Further, a plea does not have to be vacated simply because a defendant was not properly admonished. *People v. Davis*, 145 Ill. 2d 240, 250, 582 N.E.2d 714, 719 (1991). "Whether reversal is required depends on whether real justice has been denied or whether defendant has been prejudiced by the inadequate admonishment." *Davis*, 145 Ill. 2d at 250, 582 N.E.2d at 719.

¶ 22 Generally, a trial court's decision to deny the withdrawal of a guilty plea will not be disturbed unless the court abused its discretion. *Davis*, 145 Ill. 2d at 244, 582 N.E.2d at 716 (1991). However, in this case, the trial court did not consider whether defendant was correctly admonished because defendant did not include this argument in his motion to withdraw his guilty plea. Defendant acknowledges he forfeited the issue he raises on appeal but asks this court to consider it pursuant to the plain error doctrine.

¶ 23 According to the Illinois Supreme Court's opinion in *Davis*, "if a lower court fails to give the defendant the admonishments required by Rule 402 it is *possible* that this action *can* amount to plain error." (Emphases added.) *Davis*, 145 Ill. 2d at 250-51, 582 N.E.2d at 719. The plain error doctrine applies to forfeited claims in two circumstances:

> "(1) where a clear or obvious error occurred and the evidence is so closely
> balanced that the error alone threatened to tip the scales of justice against the
> defendant, regardless of the seriousness of the error and (2) where a clear or
> obvious error occurred and that error is so serious that it affected the fairness of

the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Belknap*, 2014 IL 117094, ¶ 48, 23 N.E.3d 325.

According to defendant, we should review the issue in this case for second-prong plain error. In *Davis*, the supreme court indicated "[t]he doctrine of plain error is applied to remedy errors so plain and prejudicial that failure to object to them is not a waiver for purposes of appeal." *Davis*, 145 Ill. 2d at 51, 582 N.E.2d at 719.

¶ 24        Defendant focuses on the fact he was improperly admonished he faced a Class X sentence of 6 to 30 years' imprisonment in case No. 16-CF-807 instead of a Class 1 sentence of 4 to 15 years. However, defendant's guilty plea did not involve just case No. 16-CF-807. Instead, defendant was entering a global plea involving multiple cases. Defendant agreed to plead guilty to one charge in three separate cases in exchange for the State dismissing other charges and cases and capping defendant's total sentence for the three cases at a combined maximum of 20 years. Defendant argues he felt pressured to give up his right to a trial because he believed he could receive a 60-year prison sentence. As a result, defendant asserts the State's 20-year sentencing cap seemed more generous than it actually was. Defendant also seems to suggest he might have received a lower sentence if the trial court knew the correct minimum sentence was 10 years instead of 12. This is pure speculation.

¶ 25        While the trial court erred in admonishing defendant about the minimum and maximum sentences he faced in case No. 16-CF-807, the error does not rise to the level of second-prong plain error based on this record. Defendant's reliance on *Davis* and *People v. Williams*, 2014 IL App (3d) 120824, 18 N.E.3d 83, is misplaced.

¶ 26        In *Davis*, the defendant was charged with both residential burglary and burglary.

*Davis*, 145 Ill. 2d at 243, 582 N.E.2d at 716. Without any agreement as to the sentence he would receive, the defendant pleaded guilty to the burglary charge and the residential burglary charge was dismissed. *Davis*, 145 Ill. 2d at 243, 582 N.E.2d at 715. Before the defendant entered his plea, a Treatment Alternatives for Safe Communities (TASC) program employee had indicated the defendant would be eligible for the TASC program if he pleaded guilty to burglary but not residential burglary. *Davis*, 145 Ill. 2d 243, 582 N.E.2d at 716. After entering his plea, the defendant learned he would not be eligible for the TASC program because of his criminal record. *Davis*, 145 Ill. 2d 243, 582 N.E.2d at 716. The defendant then filed a motion to withdraw his guilty plea because his reason for entering the plea was to allow him to request placement in TASC instead of being incarcerated. *Davis*, 145 Ill. 2d 244, 582 N.E.2d at 716. The trial court denied defendant's motion to withdraw his guilty plea. *Davis*, 145 Ill. 2d at 243, 582 N.E.2d at 715.

¶ 27 On appeal, the Illinois Supreme Court noted the trial court mistakenly admonished the defendant that he could be sentenced to a term of probation or conditional discharge, for which the defendant was not eligible. *Davis*, 145 Ill. 2d at 248, 582 N.E.2d at 718. According to the supreme court, "the [trial] court never explained to defendant the mandatory prison sentence facing him. Thus, it is likely that the defendant never fully understood the range of penalties which he was subject to at the time of the plea." *Davis*, 145 Ill. 2d at 248, 582 N.E.2d at 718. Our supreme court ruled:

> "We find that [the] defendant's claimed misapprehension as to his eligibility for TASC, alone, may be insufficient to disturb the trial court's ruling, as the denial of the defendant's motion to withdraw his plea did not appear to amount to an abuse of the court's discretion. However, coupled with the fact that

- 10 -

the trial court gave incorrect admonishments, which further led the defendant to believe that he would be eligible for a sentence other than incarceration, we find there to be plain error present on the part of the trial court." *Davis*, 145 Ill. 2d at 251, 582 N.E.2d at 719.

¶ 28 Unlike the defendant in *Davis*, who believed he had a chance of not going to prison if he pleaded guilty, defendant in this case understood he would be going to prison for up to 20 years pursuant to the terms of his plea agreement with the State. Further, this is not a situation where the trial court was required to sentence defendant to something harsher than the agreed upon 20-year sentencing cap. In short, defendant here received the benefit of his bargain.

¶ 29 In *Williams*, the defendant pled guilty to unlawful delivery of a controlled substance in exchange for a sentencing cap of 25 years' imprisonment. *Williams*, 2014 IL App (3d) 120824, ¶ 1, 18 N.E.3d at 85. The trial court had told the defendant on multiple occasions he faced a maximum sentence of 60 years imprisonment absent his plea agreement. *Williams*, 2014 IL App (3d) 120824, ¶ 1, 18 N.E.3d at 85. The defendant later filed a motion to withdraw his guilty plea and then an amended motion to withdraw his plea, stating his plea was not knowing and voluntary because he had been improperly admonished he could be sentenced to 60 years' imprisonment absent the plea deal. *Williams*, 2014 IL App (3d) 120824, ¶ 6, 18 N.E.3d at 85. The trial court denied the defendant's motion, finding the defendant had been properly admonished. *Williams*, 2014 IL App (3d) 120824, ¶ 6, 18 N.E.3d at 85.

¶ 30 On appeal, the Third District determined defendant should have only faced a maximum term of 30 years' imprisonment at sentencing instead of 60 years. *Williams*, 2014 IL App (3d) 120824, ¶ 22, 18 N.E.3d at 87. As a result, while the defendant believed he had negotiated a 35-year reduction of his maximum possible sentence, he had only negotiated a

5-year reduction. *Williams*, 2014 IL App (3d) 120824, ¶ 26, 18 N.E.3d at 88. The appellate court found this was not an insignificant difference. *Williams*, 2014 IL App (3d) 120824, ¶ 26, 18 N.E.3d at 88. According to the appellate court, "As in *Davis*, defendant here lost the opportunity to negotiate a lesser term of incarceration because of improper admonishments from the court. Defendant was therefore prejudiced by those improper admonishments." *Williams*, 2014 IL App (3d) 120824, ¶ 26, 18 N.E.3d at 88.

¶ 31    The situation in this case is also distinguishable from what happened in *Williams*. While the trial court in the case *sub judice* erred in admonishing defendant regarding the minimum and maximum possible sentences he faced without the guilty plea, the effect of the mistaken admonishments was much less significant. Unlike in *Williams*, where the defendant gained little by pleading guilty, defendant in the instant case was still receiving a 25-year sentencing concession from the State, with a sentencing cap in the bottom third of the proper sentencing range.

¶ 32    Based on the facts here, this is not a situation where defendant was denied real justice or was prejudiced by the trial court's incorrect admonishment.

¶ 33    We next turn to defendant's claim his trial counsel was ineffective for stipulating defendant was eligible to receive a Class X sentence in case No. 16-CF-807. This court analyzes claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on an ineffective assistance of counsel claim, a defendant must prove (1) his or her attorney's performance was so deficient he or she failed to function as the counsel guaranteed by the sixth amendment and (2) defendant was prejudiced by his or her counsel's deficient performance. *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.1158, 1163 (1999). Courts may dispose of an ineffective assistance claim by proceeding directly to the

prejudice prong of the analysis without addressing counsel's performance. *People v. Hale*, 2013 IL 113140, ¶ 17, 996 N.E.2d 607.

¶ 34 "To establish prejudice, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Hale*, 2013 IL 113140, ¶ 18 (quoting *Strickland*, 466 U.S. at 694).

¶ 35 As stated, even though the correct sentencing range on the offenses to which defendant was pleading guilty was 10 to 45 years instead of 12 to 60 years, the State's willingness to cap defendant's total prison sentence at 20 years for three serious felonies, especially considering defendant's prior criminal history and his apparent lack of defenses for the charges, was a generous offer. The 20-year sentencing cap was 25 years less than the maximum sentence defendant faced and in the bottom third of the sentencing range had defendant been convicted of the three offenses. Based on the record, defendant cannot show a reasonable probability exists he would not have entered the guilty plea in this case absent his trial counsel's alleged ineffective assistance.

¶ 36                                        III. CONCLUSION

¶ 37 For the reasons stated, we affirm the trial court's judgment.

¶ 38 Affirmed.